# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| SYLVIA CALDERA, <br>     Plaintiff, <br>     v. <br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br>     Defendant. | NO. EDCV 09-854 AGR <br><br> **MEMORANDUM OPINION AND ORDER** |

Sylvia Caldera filed this action on May 11, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on June 1 and 2, 2009. (Dkt. Nos. 7, 9.) On January 13, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On April 13, 2006, Caldera filed an application for Disability Insurance Benefits. Administrative Record ("AR") 37. On April 24, 2006, Caldera filed an application for Supplemental Security Income benefits. *Id.* In both applications, Caldera alleged a disability onset date of January 1, 1998. *Id.* However, Caldera subsequently amended the onset date to September 1, 2004. *Id.* The applications were denied initially and upon reconsideration. AR 29-32. On February 15, 2007, Caldera requested a hearing before an Administrative Law Judge ("ALJ"). AR 62. On January 2, 2008, the ALJ conducted a hearing. AR 13-28. Caldera failed to appear. AR 15, 37, 82. Caldera was represented by counsel at the hearing, at which a medical expert and vocational expert ("VE") testified. AR 13-28, 37. On June 21, 2008, the ALJ issued a decision partially granting and partially denying benefits. AR 33-50. On April 15, 2009, the Appeals Council denied Caldera's request for review. AR 1-3. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering

adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

Caldera has the following severe combination of impairments: "osteoarthritis in the bilateral knees, an abdominal disorder, and hypertension." AR 41. Caldera "also has medically determinable, but non-severe, mental impairments: depressive disorder, not otherwise specified ('NOS'), and an anxiety disorder, NOS." AR 42.

Caldera was disabled from May 1, 2005 through April 30, 2007, inclusive. AR 46. During the period of her disability, Caldera's "abdominal disorder medically equaled the criteria of section(s) 5.06(A)(E) of 20 C.F.R. Part 404, Subpart P, Appendix 1 ["Listing of Impairments"]." AR 44-45. Caldera was not disabled prior to May 1, 2005 and has not been disabled since her disability ended as of May 1, 2007. AR 50.

Prior to May 1, 2005, Calder had the residual functional capacity ("RFC") to

3

perform light work,[1] "standing and/or walking about six hours in an eight-hour workday, sitting up to eight hours in an eight hour workday, with an opportunity to sit/stand or change positions every 60 minutes. [Caldera] could occasionally push and/or pull with her bilateral lower extremities. She could occasionally climb ramps and stairs, balance, bend, stoop, crouch, or knee[l], and was precluded from climbing ropes, ladders, or scaffolds. [Caldera] had to avoid concentrated exposure to extreme cold or heat, and was precluded from work around dangerous or fast moving machinery and unprotected heights." AR 43. Prior to May 1, 2005, Caldera was capable of performing past relevant work as a cashier. AR 44 (citing Dictionary of Occupational Titles ("DOT") 211.462-014).

Caldera's disability ended as of May 1, 2007 due to improvements in her medical condition. AR 46. Since May 1, 2007, Caldera has the same RFC that she had prior to May 1, 2005. AR 47. As of May 1, 2007, Caldera has been capable of performing her past relevant work as a cashier (DOT 211.462-014). AR 48. Additionally, considering Caldera's age, education, work experience and RFC, "there are jobs that exist in significant numbers in the national economy that [Caldera] can perform," such as small products assembler (DOT 739.687-030) and office helper (DOT 239.567-010). AR 49.

### C. Consideration of Examining Psychiatrist's Opinion

The ALJ found "no basis for finding that the claimant has a 'severe' mental impairment or for the imposition of any mental limitations that would preclude the performance of her past relevant work or simple, unskilled work activities." AR 42.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

4

Caldera argues that the ALJ improperly ignored the July 25, 2006 opinion of examining psychiatrist Dr. Smith regarding mental impairments.[2] JS 3. Caldera argues that Dr. Smith's opinion "has significant ramifications for Plaintiff's vocational base." *Id.*

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and quotation marks omitted). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* at 1164 (citation omitted). An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Id.*

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57 (citation and quotation marks omitted). "The ALJ is likewise responsible for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court must uphold the ALJ's decision when the evidence is susceptible to more than one rational interpretation. *Id.*

Contrary to Caldera's argument, the ALJ agreed with the opinions of Dr. Smith and the state agency psychiatrists. AR 42. The ALJ found that Caldera has mild limitations in activities of daily living; social functioning; and concentration, persistence or pace. *Id.* The ALJ further found that Caldera experienced no episodes of decompensation. *Id.* Caldera does not dispute that

---

[2] Dr. Smith saw Caldera during the period in which the ALJ found Caldera to be disabled. Caldera mistakenly states the psychiatric evaluation was performed on June 30, 2008. JS 3. The report is dated July 25, 2006. AR 288. Dr. Smith's license expiration date was June 30, 2008. AR 294.

Dr. Smith found mild limitations.[3] JS 3. Caldera notes that Dr. Smith found mild to moderate impairment in her ability to "understand, remember or complete complex commands due to some possible interference with poor concentration." AR 293.

The ALJ correctly determined a mental impairment that causes mild limitations in the three functional areas and no episodes of decompensation would be considered "nonsevere." AR 42; 20 C.F.R. §§ 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."); 416.920a(d)(1) (same).

Moreover, Caldera does not identify any error in the ALJ's determination that her mental impairment would not preclude the performance of her past relevant work as a cashier or simple, unskilled work activities. AR 42. The ALJ noted that Caldera states she is prescribed Xanax for anxiety by her primary care physician and receives no psychological treatment. AR 42, 143, 289. Dr. Smith reported that Caldera said Xanax helps her. AR 289. Dr. Smith further noted that Caldera stated she stopped working as a caregiver in 2006 "because of her own physical problems." AR 290. Caldera attributed her limitations to physical problems, not panic attacks. AR 289.

D. **Mental Impairment**

Caldera argues that at step two of the sequential analysis the ALJ

---

[3] Dr. Skopec, a state agency physician, concluded Caldera "is partially credible with an MDI [multiscore depression inventory], but it appears that the psychiatric sx [symptoms] do not significantly decrease [Caldera's] ability to function." AR 306. Dr. Amado confirmed the finding of a "[n]on-severe psych MDI by program standards." AR 346.

improperly determined that her mental impairment was not severe. JS 6-8, AR 42-43.

At step two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[4] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen v. Chater*, 80 F.3d at 1273, 1290 (9th Cir. 1996) ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

---

[4] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); Social Security Ruling ("SSR") 85-15. Social security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and quotation marks omitted). "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290.

As discussed above, the ALJ explained that in finding Caldera's mental impairments did not cause more than a minimal limitation in her ability to perform mental work activities, he "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders." AR 42. Properly applying that analytic framework, the ALJ determined:

> [Caldera] has had mild limitation in her activities of daily living, mild limitation in social functioning, mild limitation in concentration, persistence or pace, and she has experienced no episodes of decompensation. Because [Caldera's] medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' limitation in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

AR 42.

Substantial evidence supports the ALJ's findings that Caldera's limitations in her activities of daily living, in social functioning, and in concentration, persistence or pace were mild and that she had no episodes of decompensation. As discussed above, Dr. Smith found only mild to mild-to-moderate limitations in Caldera's mental capabilities. AR 288-94. Dr. Skopec, a state agency physician, concluded that Caldera had only a mild degree of limitation in her activities of

8

daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace, with no episodes of decompensation. AR 304. Dr. Amado, also a state agency physician, confirmed that Caldera had "non-severe psych MDI by program standards." AR 346. The ALJ's reference to the lack of a "longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment" accurately summarizes the treatment records. AR 42. The ALJ did not err.

### E.  **Incomplete Hypothetical**

Caldera argues that the hypothetical posed by the ALJ to the VE at her hearing was incomplete because it failed to reflect her "multiple mild [mental] limitations." JS 11.

At the hearing, the ALJ presented the following hypothetical to the VE:

> Okay. Well I want to ask you a hypothetical question, and I'd like you to assume an individual the same age, education and work experience as [Caldera]. Further assume residual functional capacity within a full range of light work except as I say otherwise as follows. Just a moment. Exertionally is full range except this person should be allowed the opportunity to change position every 60 minutes, the change itself to last no more than 3 minutes. And in terms of foot controls, levers and so forth, this person is occasionally able to use those controls bilaterally. ¶ Posturally, all the postural are occasional except no climbing ladders, scaffolds or ropes. Environmentally, this person should avoid concentrated exposure to extreme cold or extreme heat, and should avoid all exposure to hazards such as dangerous or fast moving machinery and unprotected heights. Based on these circumstances, could this person perform either of the two past jobs, either as actually or as generally performed?

AR 26. The VE opined that a person with these characteristics and limitations could perform Caldera's past relevant work as a cashier. *Id.* The VE further testified that such a person would also be able to work as a small products assembler II (DOT 739.687-030) and an office helper (DOT 239.567-010). AR 26-27.

An ALJ may properly exclude from a hypothetical a "mild impairment, which presented no significant interference with the ability to perform basic work-related activities." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (omission of mild mental impairment from hypothetical was not error). Moreover, any error was harmless. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not reverse an ALJ's decision for harmless error."). Caldera has not shown how mild mental limitations would affect her ability to perform her past relevant work as a cashier. *See, e.g., Carmickle*, 533 F.3d at 1166 (at step four of the disability analysis, the claimant has the burden of showing inability to perform past relevant work). Nor has Caldera shown any inconsistency between a mild mental impairment and her ability to perform simple, unskilled work activities at step five of the sequential analysis. "Unskilled work" is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). "The basic mental demands of competitive remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15. Dr. Smith did not find a substantial loss of ability to perform in any of these areas. Moreover, as discussed above, Dr. Smith noted that Caldera said she stopped working as a caregiver in 2006 "because of her own physical problems" and

attributed her limitations to physical problems, not a mental impairment.  AR 289-90.

### IV.
### **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  July 27, 2010

_____
ALICIA G. ROSENBERG
United States Magistrate Judge